### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JOHN M.[1],                                      Case No. 2:24-cv-204
     Plaintiff,                              Litkovitz, M.J.

     vs.

COMMISSIONER OF                                  **ORDER**
SOCIAL SECURITY,
     Defendant.

     Plaintiff John M. brings this action under 42 U.S.C. § 405(g) for judicial review of the

final decision of the Commissioner of Social Security (Commissioner) denying his application for

disability insurance benefits (DIB).  This matter is before the Court on plaintiff's Statement of

Errors (Doc. 9), the Commissioner's response in opposition (Doc. 10), and plaintiff's reply

memorandum (Doc. 11).

## I. Procedural Background

     Plaintiff filed an application for DIB on September 19, 2019, alleging an onset date of

disability of June 1, 2015, due to left side facial pain, fatigue, stomach pain/nausea, upper back,

neck, and shoulder pain, lower back and waist tenderness, and high triglycerides.  (Tr. 270-71, *see*

*also* Tr. 338).  The application was denied initially and upon reconsideration.  Plaintiff, through

counsel, requested and was granted a *de novo* telephone hearing before administrative law judge

(ALJ) Frederick Andreas.  Plaintiff and a vocational expert (VE) appeared and testified at the

hearing on January 12, 2021.  (Tr. 70-97).  On February 2, 2021, the ALJ issued a decision,

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any
opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall
refer to plaintiffs only by their first names and last initials.

concluding that plaintiff was not disabled.  (Tr. 121-39).  The Appeals Council granted plaintiff's request for review and remanded the matter for further proceedings.  (Tr. 140-46).

On remand, the claim was assigned to the same ALJ.  After an October 6, 2022 telephone hearing (Tr. 39-69), the ALJ issued a decision on December 7, 2022, again denying plaintiff's application (Tr. 14-38).  This decision became the final decision of the Commissioner when the Appeals Council denied review on December 4, 2023.  (Tr. 1-6).

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

2

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] last met the insured status requirements of the Social Security Act on December 31, 2020.

2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of June 10, 2015 through his date last insured of December 31, 2020 (20 CFR 404.1571 *et seq*).

3. Through the date last insured, [plaintiff] had the following severe impairments: atypical face pain with differential diagnoses of trigeminal neuralgia, glossopharyngeal neuralgia, and deafferentation pain; and a back disorder (mild degenerative spondylosis of the lumbar spine) (20 CFR 404.1520(c)).

4. Through the date last insured, [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except frequent climbing of ramps, stairs,

3

ladders, ropes, or scaffolds; frequent stooping, crouching, or crawling; must avoid concentrated exposure to loud environments; and must avoid concentrated exposure to hazards such as unprotected heights or operating heavy equipment.

6. Through the date last insured, [plaintiff] was capable of performing past relevant work as a sales person, general hardware. This work did not require the performance of work-related activities precluded by [plaintiff]'s residual functional capacity (20 CFR 404.1565).

7. [Plaintiff] was not under a disability, as defined in the Social Security Act, at any time from June 15, 2015, the alleged onset date, through December 31, 2020, the date last insured (20 CFR 404.1520(g)).

(Tr. 19-30).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

4

to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Error

In his Statement of Errors, plaintiff contends that the ALJ erred in his evaluation of plaintiff's activities of daily living when assessing plaintiff's subjective report of symptoms and when evaluating the opinion of consultative examining physician Christine Rukamp, D.O. (Doc. 9 at PAGEID 2127-28). In response, the Commissioner argues that the ALJ evaluated plaintiff's subjective complaints and accounted for those complaints to a significant extent by restricting plaintiff to a limited range of light work with postural and environmental limitations. (Doc. 10 at PAGEID 2149). According to the Commissioner, the ALJ properly evaluated Dr. Rukamp's opinion and concluded that her opinion was neither supported by nor consistent with the record. (*Id.* at PAGEID 2154-57).

### E. Analysis

Plaintiff identifies the alleged onset date as June 10, 2015, and the ALJ determined that plaintiff last met the insured status requirements of the Social Security Act on December 31, 2020. (Tr. 19). As the "period of disability can commence only while an applicant is fully insured," plaintiff must establish that he was disabled prior to December 31, 2020 to be entitled to DIB. *Wallace v. Comm'r of Soc. Sec.*, No. 2:16-cv-971, 2018 WL 707567, at *6 (S.D. Ohio Feb. 5, 2018) (citing 42 U.S.C. § 416(i)(2)(c)). *See also Jones v. Comm'r of Soc. Sec.*, No. 96-2173,

1997 WL 413641, at *1 (6th Cir. July 17, 1997) ("A 'period of disability' can commence only while an applicant is fully insured.") (quoting 42 U.S.C. § 416(i)(2)(c)).

### 1. Relevant Medical Treatment

Plaintiff's alleged onset date corresponded with the date on which plaintiff "presented at the Emergency Department for nausea, vomiting, and abdominal pain after attending a picnic." (Tr. 1199). At that time, plaintiff reported being "otherwise healthy" and taking no regular medications. (Tr. 1199). A review of systems revealed "dental pain" but no joint pain, back pain, muscles aches, stiffness, or fatigue. (Tr. 1246). His triglyceride and lipase levels tested extremely high, and he was admitted to the hospital intensive care unit for treatment of triglyceride induced pancreatitis. (Tr. 1245, 1251). On June 11, 2015, plaintiff reported no dental pain, joint pain, back pain, muscle aches, stiffness, or fatigue, but his abdominal pain was a 9 out of 10. (Tr. 1256-58). After four days in the hospital, plaintiff experienced "vast improvement" and was discharged with instructions to follow up with his primary care physician and endocrinology for additional blood work. (Tr. 1272).

On August 17, 2015, plaintiff returned to Steven Hirsch, M.D., an ear, nose, and throat specialist he had seen previously for "discomfort and some tenderness in his face, neck area." (Tr. 594). Dr. Hirsch's examination revealed no abnormalities, but he ordered a CT scan of plaintiff's midface. (*Id.*). The CT scan showed "very mild patchy sinusitis bilaterally and no obvious cause for his relatively severe atypical facial pain." (Tr. 593). According to Dr. Hirsch's note, surgery "certainly can clean out the little bit of sinus disease that is present but [plaintiff is] grasping for straws to further treat his facial pain." (*Id.*).

On February 8, 2016, plaintiff saw his primary care physician, L. Terry Chappell, M.D., because, after his June 10, 2015 hospital stay, "[s]tomach ache, body aches, fatigue, etc. would

not allow [him] to do a minimal work schedule." (Tr. 449). At that time, he reported his "main symptom" as stomach pain fluctuating between a 3 and an 8 on a scale of 10 with accompanying "fatigue, poor concentration and brain fog." (*Id.*). He also "reported body aches since 2011, facial pain since February 2013, fatigue since June 10, 2015, and pancreatitis on June 10, 2015." (Tr. 449-50). He was taking Advil or Tylenol as needed for his pain. (Tr. 450). His physical examination revealed some tenderness in his mid-back and neck but was otherwise normal. (*Id.*). Dr. Chappell placed plaintiff on a thyroid supplement, having diagnosed myositis and hyperlipidemia. (*Id.*).

On April 6, 2017, plaintiff began treating with chiropractor Patrick Snyder, D.C., for gradual onset cervical pain, thoracic pain, lumbar pain, and headaches. (Tr. 1568). After treating with him six times in April 2017, plaintiff continued to see Dr. Snyder every month or so throughout the relevant period. (Tr. 1568-1622). Dr. Snyder routinely noted that plaintiff was positive for tightness and tenderness, but his records first mention face pain on November 6, 2017. (Tr. 1571).

On March 13, 2018, plaintiff saw Scott Merryman, M.D., at the OhioHealth Lipid Clinic. (Tr. 1816). Plaintiff reported to Dr. Merryman that he walked daily due to living on a farm and exercised 60 minutes per week, including walking, housework, and yardwork. (Tr. 1818). Although he reported that he fatigued "very easily" and had "chronic lower back pain" (*Id.*), the medical note indicates that he does not have a sedentary lifestyle because he "[l]ives on a farm and walks a lot." (Tr. 1821). However, the note also indicated that "[f]atigue is an issue chronically for years." (Tr. 1822). Dr. Merryman adjusted plaintiff's medications and suggested he "[i]ncrease cardio." (Tr. 1823). In discussing diet and exercise habits during a follow up visit on June 13, 2018, plaintiff reported that his exercise "is the same" and he "[g]ets a lot of activity

7

working on the farm/walking." (Tr. 1792). On September 21, 2018, plaintiff again saw Dr. Merryman, who noted that his recent activity remained "about the same on the farm. Walking a lot. Has not tracked his steps." (Tr. 1761). Plaintiff described "like pressure on the chest" that increases with exertion and that "[w]alking brings it on sometimes but not most of the time." (Tr. 1761). He further identified some shortness of breath with exertion "and he will notice fatigue, weakness with it that lasts for hours afterward. Usually lasts for minutes but rarely goes on for hours." (Tr. 1762). Plaintiff's physical examination during that visit was completely normal except for mild tenderness in the right upper quadrant of his abdomen and epigastric area. (*Id.*). He appeared "well-developed and well-nourished" with "[n]o distress" and "normal mood and affect." (*Id.*).

On July 24, 2018, plaintiff presented to neurologist Adam Ueberroth, M.D., for a "30 year history of left facial pain that has been worse over the last 8 years." (Tr. 1560). Dr. Ueberroth reported plaintiff to be without acute distress and alert. (Tr. 1563). Except for "pain to palpation posterior to the left ear," plaintiff's medical examination was normal. (Tr. 1563). Plaintiff followed up with Dr. Ueberroth on November 13, 2018. (Tr. 1548-52). Because he did not respond to Tegretol, nortriptyline or an occipital nerve block, Dr. Ueberroth referred plaintiff to a headache specialist. (Tr. 1548). At this appointment, plaintiff "still complained of a pressure-like feeling around the left side of the face and ear area and nothing seemed to make it better." (Tr. 1549).

On January 10, 2019, plaintiff sought treatment for his facial pain from neurologist Abdelhakim Hussein, M.D. (Tr. 1341-42). Plaintiff described "pressure pain" involving the left side of his face extending to his left ear and mastoid that is "constant mild all the time" with random exacerbations that may be provoked by physical activities but not teeth brushing, gum

chewing, or exposure to cold air.  (Tr. 1341).  He reported his pain as 6 to 8 on a scale of 10.  (*Id.*).  His physical examination was normal with "[n]o allodynia[2] in face."  (Tr. 1342).  Dr. Hussein diagnosed disorder of trigeminal nerve, unspecified, and atypical facial pain.  (*Id.*).  He increased plaintiff's Gabapentin and recommended weekly sphenopalatine ganglion (SPG) blocks for 12 weeks.  (*Id.*).

On January 15, 2019, plaintiff returned to the OhioHealth Lipid Clinic.  (Tr. 1721).  During this visit, plaintiff reported that he tracked his steps on his phone and routinely took between 2000 and 5000 steps per day.  (Tr. 1724).  He reported a "lack of energy, more so since the holidays, had the flu after Christmas."  (*Id.*).  He further reported "frequent nausea which he feels is associated with his facial pain."  (*Id.*).  It was further noted that "[h]is chief complaint continues to be face pain.  He is now seeing a neurologist who specializes in headaches and face pain.  He is planning on doing a nerve block tomorrow and is hopeful this will help."  (Tr. 1725).

On April 29, 2019, Dr. Hussein administered the twelfth SPG block.  (Tr. 1315-16).  One month later, plaintiff followed up with Dr. Hussein and reported that the SPG blocks did not control his facial pain.  (Tr. 1313-14).  Dr. Hussein stopped plaintiff's Gabapentin and started him on Baclofen.  (*Id.*).  When the Baclofen proved ineffective for plaintiff's facial pain, Dr. Hussein tried trigeminal nerve (TN) blocks.  (Tr. 1308, 1310, 1312).  On August 7, 2019, plaintiff reported that the TN blocks worked for only a few hours at a time.  (Tr. 1305-06).  Dr. Hussein prescribed Lyrica and Amitriptyline and instructed plaintiff to follow up with him as needed.  (*Id.*).

---

[2] Allodynia is defined as "pain due to a stimulus that does not normally provoke pain."  *See* National Library of Medicine National Center for Biotechnology Information (https://www.ncbi.nlm.nih.gov/books/NBK537129/#:~:text=Allodynia%20is%20defined %20as%20%22pain,produce%20sensation)%2C%20causing%20pain) (last visited 2/11/2025).

Notes from plaintiff's follow-up examination with Dr. Merryman on June 4, 2019, indicate that plaintiff's "[t]rigeminal nerve situation is still a problem." (Tr. 1705). His physical examination was again normal except for tenderness in his upper abdomen "similar to before." (Tr. 1706). He again appeared "well-developed and well-nourished" with "[n]o distress" and "normal mood and affect." (*Id.*). Plaintiff reported walking 3000 steps per day and occasionally 4000 to 5000 steps per day. (*Id.*).

On August 19, 2019, plaintiff sought treatment from neurosurgeon Robert Gewirtz, M.D. (Tr. 1368-70). Dr. Gewirtz initially recommended a glycerol rhizotomy for which "approximately 70% of patients with atypical facial pain will have some degree of a positive response." (Tr. 1370). On October 14, 2019, after reviewing plaintiff's "essentially" normal MRI images and radiologist report, Dr. Gewirtz stated, "The patient clearly has atypical facial pain and not trigeminal neuralgia. I would offer him a glycerol rhizotomy. I told him that the literature supports about a 50 to 60% response rate." (Tr. 1366). On December 5, 2019, Dr. Gewirtz performed plaintiff's left glycerol rhizotomy. (Tr. 1404-05).

On December 18, 2019, plaintiff presented to Dr. Gewirtz for his two-week post-operative visit indicating that he had not noticed much improvement in his atypical facial pain since undergoing the procedure. (Tr. 1463). Although plaintiff's physical examination was unremarkable, "he continued to have his 'odd' pressure sensation, although he denied having [any] sharp shooting electric type pains." (*Id.*). Dr. Gewirtz recommended that plaintiff follow up with his primary care physician or neurologist for medication treatment. (Tr. 1464).

On April 3, 2020, plaintiff followed up with Dr. Merryman via telephone consultation due to the coronavirus pandemic. (Tr. 1408). At that time, he experienced continued facial pain "as previously discussed," engaged in "[s]ome physical activity," including laundry, taking care of

10

bees, and caring for his father post-appendicitis with rupture. (*Id.*). According to Dr. Merryman's notes, "John has been doing all of the cooking and other care," but he was not taking more than 3000 steps per day. (*Id.*). Plaintiff expressed a desire to increase his physical activity at that time rather than increase his medication dosage. (Tr. 1409).

On June 8, 2020, plaintiff sought physical therapy from Sara Rismiller, P.T. (Tr. 1510). Plaintiff reported that he cared for his elderly parents "full time," ambulated independently in the community, engaged in beekeeping and farming, was unable to work, and completed his activities of daily living independently "[w]ith pain." (Tr. 1511). Plaintiff sought physical therapy seven times between June 8, 2020 and July 24, 2020, at which time he stopped attending. (Tr. 1495, 1499). As of July 24, 2020, plaintiff reported that he was unable to achieve the goal of performing daily farm activities and tasks related to caring for his parents with a pain level of 4 out of 10 or less. (Tr. 1497). Plaintiff further reported that his compliance with the prescribed home exercise program was "a little bumpy." (Tr. 1495). He attributed his lack of compliance to being "too sore doing his farm duties to perform the exercises on a regular basis." (*Id.*).

On July 22, 2020, plaintiff consulted neurologist Kiran Rajneesh, M.D., for treatment of left facial pain, which he "described as constant, dull and aching and is rated as 4 on a scale of 0 - 10" but reaches an 8 on his worst days. (Tr. 1470). Other than "[a]llodynia to light touch over left V2 and V3 territories," plaintiff's physical examination was normal. (Tr. 1474). He was alert and oriented and had a regular pulse, unlabored breathing, congruent mood and affect, and normal speech and language. (Tr. 1474). Although plaintiff told Dr. Rajneesh that his symptoms interfered with chores (Tr. 1470), he indicated the following when asked how much his symptoms limited specific actions:[3] vigorous activity such as running and lifting heavy objects – "yes,

---

[3] The medical notes offer three choices for each activity – "yes, limited a lot," "yes, limited a little," or

limited a little;" pushing a vacuum cleaner, playing golf, moving a table, or bowling – "yes, limited a little;" carrying/lifting groceries – "yes, limited a little;" climbing stairs – "no, not limited at all;" bending, kneeling or stooping – "no, not limited at all;" bathing or dressing self – "no, not limited at all;" writing – "no, not limited at all;" feeding self – "no, not limited at all;" getting out of a chair or car – "yes, limited a little;" walking one block – "no, not limited at all;" and walking one mile – "no, not limited at all." (Tr. 1474). Dr. Rajneesh offered a trigeminal ganglion block and left glossopharyngeal nerve block, but plaintiff chose to defer. (Tr. 1474). Dr. Rajneesh told plaintiff to follow up "as needed." (*Id.*).

On October 1, 2020, plaintiff had a telehealth appointment with Dr. Merryman. During that appointment, plaintiff reported that he was treating his face pain with acetaminophen; the physical therapy did "not help much" with his stiff neck; his back pain was "less"; and he was negative for fatigue, shortness of breath, and chest pains and palpitations. (Tr. 1923). He further reported that his energy and stamina were "compromised by episodes of face pain as this is relieved by rest and so cannot be active every day." (Tr. 1924). He planned to eat more vegetables from his garden and be "[m]ore active with work around his place." (*Id.*). At that time, he was still caring for his father. (*Id.*). Dr. Merryman continued his atorvastatin and fenofibrate at the same levels and asked him to "[r]emain as active as you are able," continue to improve his dietary habits, and follow up in February 2021. (Tr. 1924).

On December 11, 2020, plaintiff saw Joey Reed, C.N.P., for a presurgical examination in preparation for a femoral hernia repair. (Tr. 1525). He reported that was able to climb a flight of stairs and walk "a fair distance" without chest pain or shortness of breath and that he was able to perform all activities of daily living. (*Id.*).

---

"no, not limited at all." (Tr. 1474).

## 2. The ALJ's Symptom Severity Evaluation is Supported by Substantial Evidence.

ALJs must "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2. *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)). A two-step inquiry applies to symptom evaluation. The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). Step two of symptom evaluation shifts to the severity of a claimant's symptoms. The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *4. In making this determination, the ALJ will consider the following:

(i)     Your daily activities;

(ii)    The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability.  SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9.  *See also id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record").  At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

Plaintiff contends that the ALJ overstated plaintiff's activities of daily living and selectively discussed portions of the medical records that favor normal findings. (Doc. 9 at PAGEID 2136-39). The Commissioner counters that the ALJ properly evaluated plaintiff's subjective complaints and accounted for his symptoms by restricting plaintiff to a limited range of light work with postural and environmental limitations. (Doc. 10 at PAGEID 2149-53).

In applying the two-step inquiry, the ALJ determined that plaintiff's atypical face pain, body aches, and fatigue could reasonably be expected to produce his symptoms. (Tr. 21). However, the ALJ found plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." (Tr. 22).

The ALJ noted that between the alleged onset date of June 10, 2015 and the date last insured, December 31, 2020, plaintiff's "activities of daily living were not consistent with disabling physical impairment or disabling pain." (Tr. 27). The ALJ noted plaintiff's ability to walk daily and to engage in farming, housework, and yardwork. (Tr. 27-28, citing Tr. 1495, 1761, 1818, and 1821). He discussed plaintiff's daily step counts, noting that they varied from 2000 to 5000 per day (Tr. 27, citing Tr. 1706, 1724), plaintiff's ability to care for his elderly parents (Tr. 27, citing Tr. 1408, 1497, 1510-11), and plaintiff's beekeeping chores (Tr. 27-28, citing Tr. 1510, 1511). The ALJ specifically noted that plaintiff told Dr. Rajneesh that his facial pain interfered with his chores and was exacerbated by physical activity but plaintiff's self-report to Dr. Rajneesh indicated that, as of July 22, 2020, even vigorous activity "was only 'limited a little.'" (Tr. 27-28, quoting Tr. 1474). On December 11, 2020, plaintiff reported being "able to walk a fair

distance without chest pain or shortness of breath and he was able to perform 'all'

activities of daily living."  (Tr. 29, citing Tr. 1525).

Plaintiff contends that he performed these activities at his own pace rather than as would

be required to work full-time, and the ALJ selectively discussed evidence of plaintiff's activities

of daily living to support a non-disability finding.  (Doc. 9 at PAGEID 2137-39).  As courts  have

explained:

> Generally, an ALJ has a duty not to cherry-pick facts from the record to support a
> finding of not disabled where a finding of disabled would otherwise be appropriate.
> *Smith v. Comm'r of Soc. Sec.*, No. 1:11-cv-2013, 2013 WL 943874, at *6 (N.D.
> Ohio, March. 11, 2013) (citations omitted).  However, an ALJ does not cherry-pick
> the record simply by resolving discrepancies in the record against the claimant.  *Id.*
> Moreover, the undersigned does not conduct a de novo review of the record, and an
> ALJ's findings are not subject to reversal for the sole reason that substantial evidence
> could support the opposite finding[.]  *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th
> Cir. 2001).  What some describe as "cherry-picking" may more neutrally be termed
> weighing the evidence.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir.
> 2009).

 *Coppage v. Berryhill*, No. 1:16-cv-00144, 2017 WL 8640926, at *4 (W.D. Ky. Aug. 11, 2017),

*report and recommendation adopted,* 2018 WL 305336 (W.D. Ky. Jan. 5, 2018); *see also DeLong*

*v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry-picking"

arguments are seldom successful because they require the impermissible reweighing of evidence)

and *Solembrino v. Astrue*, No. 1:10-cv-1017, 2011 WL 2115872, at *8 (N.D. Ohio May 27, 2011)

(an ALJ "does not 'cherry pick' the evidence merely by resolving some inconsistencies

unfavorably to a [plaintiff]'s position.").

In support of his "selective citation" contention, plaintiff claims:  (1) the ALJ relied on

"vague" comments that plaintiff walked "a lot" without noting that walking less than 5,000 steps

per day is "consistent with a sedentary lifestyle" (Doc. 9 at PAGEID 2137); (2) the ALJ

"highlighted" Dr. Rajneesh's notes that plaintiff was "Limited a Little" with vigorous activity

without explaining the boundaries of "Limited a Little" versus "Limited a Lot" and without stating that the same note indicated allodynia to light touch and identified "the importance of activity modification" (Doc. 9 at PAGEID 2138); and (3) the ALJ failed to discuss notes of increased pain with activity, including the physical therapist's notes and examination findings. (Doc. 9 at PAGEID 2138-39, citing Tr. 1408, 1495-97, and 1510-11).  The Court disagrees.

First, the ALJ specifically and accurately stated that, once plaintiff started tracking his steps on his phone, he reported daily step counts between 2000 and 5000.  (Tr. 27).  The ALJ did not use plaintiff's self-reported activities to determine a specific level of functional ability. Rather, he cited them as inconsistent with plaintiff's claimed disabling pain.  An ALJ properly considers such evidence in evaluating the severity of a plaintiff's symptoms.  *See Corinne C. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1034, 2022 WL 1590818, at *17 (S.D. Ohio May 19, 2022) (citing *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013); 20 C.F.R. § 404.1529(c)(3); *see also Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997)) ("Although the ability to [perform activities of daily living] is not direct evidence of an ability to do gainful work, [a]n ALJ may . . . consider [such] activities . . . in evaluating a claimant's assertions of pain or ailments.").

Second, in relying on Dr. Rajneesh's notes, the ALJ stated:

On July 22, 2020, [plaintiff] told Dr. Rajneesh that his left facial pain symptoms interfered with chores and his pain was exacerbated by physical activity.  However, regarding his activity level, [plaintiff] specifically reported to Dr. Rajneesh that vigorous activity (such as running and lifting heavy objects) was only "limited a little"; moderate activity (such as pushing a vacuum cleaner, playing golf, moving a table, bowling, carrying/lifting groceries, and getting out of a chair or car) was only "limited a little"; and moderate activity (such as climbing stairs, bending/kneeling/stooping, bathing or dressing self, writing, feeding self/cutlery, walking one block, and walking one mile) was "not limited at all" (B29F/2, 6).

(Tr. 27-28).  A review of Dr. Rajneesh's note from July 22, 2020 confirms that the ALJ accurately summarized it.  (Tr. 1470, 1474).  Plaintiff contends that "this was an underexplained note, not explaining what constituted 'Limited a Little' versus 'Limited a [L]ot' and not reconciling the chart using such terms with other aspects of the same note."  (Doc. 9 at PAGEID 2138).  However, the terms "a little" and "a lot" are not used in other parts of the medical note, and the note contains no indication that plaintiff either requested or required clarification of such commonly used terms.  (Tr. 1470-74).  Plaintiff further claims that the ALJ failed to reconcile plaintiff's self-reports with the exam in the same note that revealed allodynia to light touch over left V2 and V3 territories.  (Doc. 9 at PAGEID 2138).  However, the ALJ specifically noted that Dr. Rajneesh's "physical examination was normal except for some allodynia to light touch over the left V2 and V3 territories."  (Tr. 25, citing Tr. 1473).  While the note indicates that Dr. Rajneesh "[c]ounseled patient regarding the importance of activity modification, weight loss, diet, exercise and consistent sleep habits," it appears in context that Dr. Rajneesh was encouraging plaintiff to engage in more activity rather than less.  (Tr. 1474).  Thus, plaintiff's contention that the ALJ selectively utilized Dr. Rajneesh's treatment notes is not well taken.

Finally, as to plaintiff's contention that the ALJ failed to adequately discuss plaintiff's July 24, 2020 physical therapy notes (Doc. 9 at PAGEID 2139), the Court again disagrees. Plaintiff's physical therapy notes are identified by the ALJ as "B29F," which corresponds to the record at Tr. 1494-1515.  The July 24, 2020 note by Erik Phillips, P.T., is contained at Tr. 1495-99, and can be fairly summarized as follows:  Plaintiff attended seven physical therapy appointments between June 8, 2020 and July 24, 2020; he reported "0% improvement in functional activity tolerance" and "states he has been in pain for over 25 years and has been too sore doing his farm duties to perform the [prescribed] exercises on a regular basis"; he attributes

his symptoms to pancreatitis; from the first physical therapy visit to the seventh, his pain-related

disability during activities of daily living score regressed from 42/100 to 46/100 (with zero being

no disability); although his goals included performing daily farm activities and parental

caregiving tasks with pain level of 4 out of 10 or less, plaintiff stated "that ain't happening"; at the

time plaintiff stopped attending physical therapy, he demonstrated "limited progress" in his

cervical range of motion, flexibility, strength, posture, and ability to perform farm tasks with less

pain; he "also reports ongoing difficulty in performing farm related duties and caregiving for his

parents." (Tr. 1495-99). Plaintiff's June 8, 2020 physical therapy notes by Sara Rismiller, P.T.,

provide, in part:

> [Plaintiff] states his most bothersome problem is left ear pain and left cheek
> pressure. This usually gets worse during the day. The pressure will transition to
> pain as he does more. He feels better when he does less. His daily activities include
> caring for elderly parents, beekeeping, and farm work. He had to stop formally
> working 5 years ago following pancreatitis.
>
> About 3x per week he feels like what he experiences as a migraine – this happened
> about 2 months ago when doing beekeeping and had long working days. Pain starts
> in the jaw and radiates up. "Cross between a sinus infection and ice-cream
> [headache]." Has some intermittent imbalance and reduced endurance. . . . His
> symptoms have gradually gotten worse.

(Tr. 1510).

The ALJ cited the July 24, 2020 physical therapy records noting plaintiff performed

"farm" duties and "caregiving for his parents" (Tr. 28, citing B29F/2) as one piece of evidence in

assessing plaintiff's daily activities. Contrary to plaintiff's contention, the ALJ's decision noted

plaintiff's complaints of increased pain with activity in the decision. (*See, e.g.*, Tr. 21 ["Activity

increases the facial pain along with body aches and fatigue."]; Tr. 24 [pain "worsened with 'any

activity' and minimally improved with time, heat, and ice"]; Tr. 27 ["left facial pain . . . was

exacerbated by physical activity"]). To the extent plaintiff suggests the ALJ erred by not

repeating similar findings in plaintiff's physical therapy notes discussed above, there is no requirement "that an ALJ discuss every piece of evidence in the record." *Preston v. Comm'r of Soc. Sec.*, No. 22-4026, 2023 WL 4080104, at *3 (6th Cir. June 20, 2023) (citing *Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 195 (6th Cir. 2020)).  Instead, this Court must evaluate whether the ALJ considered all of plaintiff's medically determinable impairments and supported his decision with substantial evidence.  *Id.* (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)).  The ALJ here considered plaintiff's daily activities, along with the objective testing and clinical evidence, unremarkable physical examination findings, and course of treatment (including physical therapy, chiropractic treatment, nerve blocks, and medication), and reasonably determined that plaintiff's subjective symptoms were not consistent with disabling physical impairment or disabling pain/fatigue.  Accordingly, plaintiff's first statement of error is overruled.

### 3.  The ALJ's Evaluation of Dr. Rukamp's Opinion is Supported by Substantial Evidence.

ALJs must adhere to agency regulations governing the evaluation of medical opinion evidence.  Under the regulations applicable to plaintiff's claims, the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[4], including those from your medical sources."  20 C.F.R. § 404.1520c(a).  Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

---

[4] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.  For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion.  20 C.F.R. § 404.1520c(c)(1)-(5).  The most important factors the ALJ must consider are supportability and consistency.  20 C.F.R. § 404.1520c(b)(2).  With respect to the supportability factor, "[t]he more relevant the objective medical evidence[5] and supporting explanations presented by a medical source are to support his or his medical opinion(s) . . . the more persuasive the medical opinions . . . will be."  20 C.F.R. § 404.1520c(c)(1).  Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ."  20 C.F.R. § 404.1520c(c)(2).  The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision.  20 C.F.R. § 404.1520c(b)(2).  Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation.  *Id.*  However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ."  20 C.F.R. § 404.1520c(b)(3).  Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources.  20 C.F.R. § 404.1520c(d).

---

[5] Objective medical evidence is defined as "signs, laboratory findings, or both."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

Christine Rukamp, D.O., performed a consultative examination of plaintiff for disability purposes on January 30, 2020. (Tr. 1383-90). Plaintiff complained of suffering from trigeminal neuralgia, body pain, and generalized fatigue. He reported a longstanding history of left facial pain which had significantly worsened since 2015. (Tr. 1383). At that examination, he reported left side facial pain at a level 8 out of 10, which he described as a "pressure and sharp sensation" that worsened with activity and improved minimally with time, heat and ice. (*Id.*). Plaintiff reported undergoing multiple treatments for this pain including sinus surgery, medications and facial injections with minimal improvement in symptoms. (*Id.*). He also reported a longstanding history of musculoskeletal pain in the shoulders and low back. (*Id.*).

Dr. Rukamp's examination revealed tenderness with tapping over the left side of plaintiff's face, but the remainder of the examination findings were normal. (Tr. 1384, 1387-90). Dr. Rukamp noted that plaintiff's speech pattern, cognition, and heart rate and rhythm were all normal, and his respirations "nonlabored." (Tr. 1384). Plaintiff was able to ambulate "without difficulty." (*Id.*). Dr. Rukamp's manual muscle testing indicated that plaintiff could raise his shoulder abductors, external and internal rotators, elbow flexors and extensors, wrist flexors and extensors, fingers, hip flexors and extensors, knee flexor and extensors, feet and toes "against maximal resistance." (Tr. 1387). His fine motor skills all tested normal, and he exhibited normal ability to pick up a coin, key, write, hold a cup, open a jar, button and unbutton, operate a zipper and open a door. (Tr. 1387-88). He exhibited no muscle spasm, spasticity, clonus, primitive reflexes, or muscle atrophy. (Tr. 1388). His range of motion testing was all normal. (Tr. 1388-90). Based on her examination and plaintiff's self-reports, Dr. Rukamp opined:

> [Plaintiff] is a 58-year-old male who presents for disability exam primarily related to a diagnosis of what is believed to be trigeminal neuralgia which results in significant pain in his left face when he has these episodes. He has almost no ability to do any type of work at all secondary to the pain. The pain is nearly constant

22

> although worsens at times. When it is worse he has significant difficulty doing any type of activity. On examination he did have normal range of motion although you could tell that he had significant pain in the left side of his face while doing any type of activity. I think that at best he would be able to do sedentary work. However, with the number of attacks that he is having he may be inappropriate even for sedentary type work.

(Tr. 1385).

In evaluating Dr. Rukamp's assessment, the ALJ found her opinion "unpersuasive." (Tr. 24). The ALJ reasonably determined that Dr. Rukamp's opinion was not supported by her normal physical examination findings and not supported with an adequate explanation. (Tr. 24-25). As the ALJ correctly noted in his decision, Dr. Rukamp's examination of plaintiff revealed normal gait, normal strength throughout, and normal range of motion, and lumbar spine x-rays showed mild degenerative spondylosis. (Tr. 24, Tr. 1384, Tr. 1386-90). Plaintiff alleges the ALJ failed to give due consideration to a single finding of tenderness with tapping on the left side of plaintiff's face. (Doc. 9 at PAGEID 2141-42, citing Tr. 1384). It is not apparent how this single tenderness finding is probative of disability and outweighs the multiple other normal examination findings the ALJ relied on in his supportability analysis. In addition, the ALJ also noted that Dr. Rukamp's opinion lacked a supported explanation. *See* 20 C.F.R. § 404.1520c(c)(1). The ALJ stated that Dr. Rukamp failed to explain how she "could 'tell' . . . that [plaintiff] had significant pain in the left side of his face while doing 'any' type of activity" when Dr. Rukamp "only observed the activities he performed in her office." (Tr. 24). Plaintiff argues the ALJ should have deferred to Dr. Rukamp's opinion given she is a licensed medical professional. As the Commissioner points out, however, accepting plaintiff's argument would require an ALJ to defer to every medical opinion and ignore the relevant regulatory scheme that governs the persuasiveness of those opinions. The Court determines that the ALJ's supportability analysis is supported by substantial evidence.

23

The ALJ's consistency analysis is also supported by substantial evidence.  The consistency analysis "involves comparing a medical opinion or prior administrative medical finding with *the evidence from other medical sources and nonmedical sources in the claim*." *Teresa A. v. Comm'r of Soc. Sec.*, No. 2:23-cv-036, 2024 WL 62646, at *4 (S.D. Ohio Jan. 5, 2024) (Report and Recommendation), *adopted*, 2024 WL 4403751 (S.D. Ohio Oct. 4, 2024) (quoting *Cindy F. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-cv-00047, 2022 WL 4355000, at *7 n.5 (S.D. Ohio Sept. 20, 2022) (quoting 20 C.F.R. § 404.1520c(c)(2) (emphasis added)).  As the ALJ reasonably found, Dr. Rukamp's opinion that plaintiff experienced significant pain in the left side of his face with "any" activity was "not consistent with any observations made by [plaintiff]'s treating physicians" (Tr. 25) as none of those physicians noted observations of significant facial pain or distress during office visits.  The ALJ specifically noted that Dr. Gewirtz consistently found plaintiff's mood and affect "'appropriate,' and Dr. Gewirtz never noted pain in the left side of [plaintiff]'s face while doing 'any' type of activity."  (*Id.*, citing Tr. 1368-70, Tr. 1463-64).  The ALJ further explained that other medical providers "noted consistently that [plaintiff] was in 'no acute distress.'"  (Tr. 25, citing Tr. 564, 1342, 1474, 1563).  Plaintiff's neurologist, Robert Gewirtz, M.D., consistently noted that plaintiff's mood and affect were "appropriate," the MRI revealed no underlying pathology, and plaintiff described his pain to Dr. Gewirtz as a "'constant' burning sensation."  (Tr. 24-25, citing Tr. 1366-70, 1462-64).  The ALJ accurately found that other providers noted consistently that plaintiff was in "no acute distress." (Tr. 25).  For example, plaintiff saw gastroenterologist, Thomas Ransbottom, M.D., in November 2015, who found on examination, plaintiff was appropriately groomed, conversed appropriately, and was in no acute distress.  (Tr. 564-65).  On July 24, 2018, plaintiff consulted with neurologist, Adam Ueberroth, M.D., about his left facial pain.  On examination, Dr. Ueberroth reported that

plaintiff was alert and in no acute distress. (Tr. 1563). On March 12, 2019 and June 24, 2029, Brittany Buening, C.N.P., examined plaintiff and both times found him to be "in no acute distress." (Tr. 1286, 1294). During a May 18, 2020 telemedicine consultation with otoneurologist John Oas, M.D., Dr. Oas reported that plaintiff "appeared well and in no acute or painful distress." (Tr. 1492). On December 11, 2020, Joey Reed, C.N.P., examined plaintiff and reported that he was "in no acute distress." (Tr. 1525). Plaintiff reported to nurse practitioner Reed that he was "[d]oing well, no current complaints." (*Id.*). The ALJ's evaluation of the consistency of Dr. Rukamp's opinion with those of plaintiff's other medical providers is supported by substantial evidence.

Plaintiff contends the ALJ conducted the same flawed analysis of plaintiff's activities of daily living in his consistency analysis as plaintiff discussed in connection with his first assignment of error. Plaintiff argues the ALJ failed to credit plaintiff's testimony that he broke his tasks up over the course of a week, consider his relatively low step counts, and address the medical notes reporting increased pain with his activities of daily living. (Doc. 9 at PAGEID 2141-42).

For the reasons discussed above in connection with plaintiff's first assignment of error, the Court finds the ALJ reasonably assessed plaintiff daily activities in assessing the consistency of Dr. Rukamp's opinion with those activities. The ALJ reasonably determined that Dr. Rukamp's opinion was "clearly not consistent with [plaintiff]'s activities of daily living." (Tr. 25). The ALJ relied on plaintiff's self-reported daily step counts, parental caregiving tasks, walking, housework, beekeeping activities, and yardwork in explaining his conclusion. (*Id.*). The Court finds the ALJ's reasons substantially supported by the record.

In this case, the ALJ adhered to agency regulations governing the evaluation of medical opinion evidence.  The ALJ considered the supportability and consistency of Dr. Rukamp's opinion and explained how he considered the supportability and consistency factors in evaluating Dr. Rukamp's opinions.  *See* 20 C.F.R. § 416.920c(b)(2).  Once the ALJ has applied the correct legal standards, the Court "must defer to an ALJ's findings if they are supported by substantial evidence, even if the record also supports an opposite conclusion," based on the record as a whole.  *Mills v. Comm'r of Soc. Sec.*, No. 24-5062, 2024 WL 5347197, at *2 (6th Cir. Nov. 14, 2024) (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604-05 (6th Cir. 2009)).  Accordingly, plaintiff's second alleged error must be overruled.

## III.  Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 9) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED.  IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 2/14/2025

Karen L. Litkovitz
United States Magistrate Judge